J-S35020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 255 MDA 2018 |

Appeal from the Order Entered January 10, 2018
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000561-2006

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY PANELLA. J.                 **FILED AUGUST 03, 2018**

J.P. ("Father") appeals from the order entered January 10, 2018, in the
Court of Common Pleas of York County, that granted the motion of the York
County Office of Children, Youth and Families ("CYF"), and suspended Father's
unsupervised visitation with his dependent female child, J.P., born in July 2003
("Child"). We affirm.

Father previously appealed the trial court's order adjudicating Child
dependent. In affirming the trial court's  order,  this  Court  set  forth  the
following factual and procedural background:

> Children's[1] mother is deceased, and teenage Children
> regularly reside with Father. On January 6, 2016, upon receiving
> a complaint that Father had overdosed on prescription pain
> medication, paramedics responded to Father's and Children's
> home and transported Father to the hospital. On January 8, 2016,

---

[1] Child and her brother, K.P. (collectively "Children"), were the subject of the
prior appeal.

CYF received a referral regarding Father in light of the January 6th incident. Also on January 8, 2016, CYF filed motions for special relief, requesting that Father have only supervised contact with Children. By orders dated and filed on January 11, 2016, the court preliminarily granted CYF's motions and prohibited Father from having contact with Children without the supervision of Children's paternal grandparents.

On January 21, 2016, the court held a hearing on CYF's motions. By orders dated and filed January 21, 2016, the court granted CYF's motions, maintained the January 11th orders, and directed that Children would temporarily reside with their paternal grandparents although Father retained legal and physical custody of Children. Through the January 21st orders, the court also required Father to undergo drug and alcohol evaluation. On February 26, 2016, Children resumed residency with Father.

On March 2, 2016, police responded to the home of a neighbor of Father. After visiting the neighbor, J.P. refused to return home; and Father appeared at the neighbor's home to retrieve J.P. After investigation, police believed Father was under the influence of prescription pain medication and contacted CYF. On March 3, 2016, CYF filed applications for emergency protective custody. A master held a shelter care hearing on March 7, 2016. By orders dated March 7, 2016, and filed on March 8, 2016, the court placed Children in the care of emergency caregivers and in CYF's legal and physical custody.

On March 9, 2016, CYF filed dependency petitions requesting the court to adjudicate Children dependent. The court held a dependency hearing on March 16, 2016, which continued on April 21, 2016. During the hearing, the court heard the testimony of Father, the police officer who responded to the March 2, 2016 incident, and a drug and alcohol monitoring specialist who collected drug test samples from Father. The Children also testified *in camera*. By orders dated and filed on April 21, 2016, the court adjudicated Children dependent, directed Children to remain under the care of emergency caregivers, and maintained CYF's physical and legal custody of Children.

*In re J.P.*, 2016 WL 5419600, at *1 (Pa. Super., filed September 27, 2016)

(unpublished memorandum).

Following Child's adjudication as dependent, a permanency review order dated July 13, 2017, reflects Father had unsupervised visitation with Child three times per week, as well as one time per week as part of an equine therapy program. The permanent placement goal was return to parent, although the order reflects Child wants her permanency goal changed to adoption. On September 7, 2017, CYF filed a motion to suspend Father's unsupervised visitation with Child.

In the motion, CYF alleged that on August 17, 2017, Father and Child had an argument during an unsupervised visit. *See* Motion to Suspend at ¶¶ 7-12. Child called her foster mother to pick her up and, upon their return home, discovered Father had called the police who were waiting for them. *See id*., at ¶¶ 13-15. On August 20, 2017, Father arrived to pick up Child for an unsupervised visit. *See id*., at ¶ 19. When she would not go with Father, he again contacted the police. *See id*., at ¶ 20. CYF asserted a meeting occurred on August 21, 2017, where all parties present, including Father's then counsel, agreed to suspend unsupervised visits. *See id*., at ¶ 21-22. Nevertheless, Father appeared to pick Child up for unsupervised visits on August 24, 2017, and August 31, 2017. *See id*., at ¶¶ 24-25. Child did not want to go with Father, and Father contacted the police to attempt to force Child to visit with him. *See id*., at ¶ 26. CYF requested Father's visitation be suspended unless it occurred in a therapeutic setting. *See id*., at ¶ 30.

On September 7, 2017, the trial court entered an order scheduling a hearing on CYF's motion. The order also suspended Father's visitation with

Child, except in a therapeutic setting, pending further order of court. The court conducted hearings on the motion on October 19, 2017, November 21, 2017, and January 8, 2018. CYF presented the testimony of Ellie Williams, the executive director and lead health therapist at Equiteam Support Services; Kate Maloney and Carla Arp, family engagement specialists at Pressley Ridge; Erin Volz and Tom Donaghy, CYF caseworkers; and Child. Father, represented by counsel, testified on his own behalf. At the conclusion of the January 8, 2018 hearing, the court entered an order granting CYF's motion and suspending Father's unsupervised visitation with Child pending further action of the court. The order permitted Father to have supervised visitation with Child once per week, and to continue to participate in equine therapy with Child.

On February 5, 2018, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal.

On appeal, Father presents the following issue for review: "Whether the trial court erred in granting the Agency's motion to suspend Father's rights of unsupervised visitation[?] Father's Brief, at 7 (unnecessary capitalization omitted).

Our scope and standard of review of Father's issue is as follows:

In dependency proceedings our scope of review is broad. Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determination. Although bound by the facts, we are not bound by

the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In re C.B.*, 861 A.2d 287, 294 (Pa. Super. 2004) (citations omitted)

In dependency cases such as this, the standard against which visitation is measured depends upon the goal mandated in the family service plan. Where, as here, reunification remains the goal of the family service plan, visitation may not be denied or reduced unless it poses a grave threat. *See In Re C.J.*, 729 A.2d 89, 95 (Pa. Super. 1999). Where the permanency goal is no longer reunification, the court may suspend, limit, or deny visitation if it is in the best interests of the child. *See id*. ("The 'best interests' standard, in this context, is less protective of parents' visitation rights than the 'grave threat' standard."). In, we explained,

> The "grave threat" standard is met when the evidence clearly shows that the parent is unfit to associate with his or her children; the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

*In re C.B.*, 861 A.2d at 293-294 (citations and some internal quotation marks omitted).

Nevertheless, "[i]n rare instances, we have approved restricting or *temporarily* suspending visitation even though there has been no showing of such severe mental or moral deficiencies in the parent as would constitute a grave threat to the child's welfare." *In re Damon B.*, 460 A.2d 1196, 1198 (Pa. Super. 1983) (holding reduction of mother's visitation rights was

appropriate, even absent showing of mother's severe mental or moral deficiencies which would constitute grave threat to child's welfare, where visits were counterproductive and child experienced severe stress during visits; reduction of visitation was temporary and limited in time, where court scheduled review hearing within next seven months).[2]

Father contends the trial court erred by failing to consider the grave threat standard when it limited Father's visitation with Child. He argues no evidence established Father's unsupervised visitation constituted a grave threat. Father specifically cites to the testimony of Child, asserting she felt uncomfortable, but not unsafe, during the visits.

The trial court explained its decision to suspend unsupervised visitation as follows:

> As it pertains to the agency's motion to suspend, the [c]ourt is granting that motion. Father's rights of unsupervised visitation with the minor child will continue to be suspended pending further action of the [c]ourt. He is to have supervised visitation with the minor child once a week, at this time with Pressley Ridge providing that supervision. He is also to continue to participate in Equiteam therapy with the minor child and with the therapist Ms. Williams.
>
> The [c]ourt's decision in granting this motion is based upon the totality of the testimony of all three hearings concerning the motion to suspend, including Ms. Williams' testimony here today that it would not be in the minor youth's best interest or her

---

[2] In **In re Damon B.**, the trial court improperly applied the "best interest" standard instead of the "grave threat" standard. This Court concluded the best interest standard was inappropriate; nevertheless, this Court explained the trial court's error did not require reversal of the order reducing visitation because the Superior Court can affirm the trial court's ruling on any basis.

mental health and well-being for visits to be increased, even for increased supervised visits at this time.

Trial Court Order, 1/10/18, at 2.

The trial court subsequently issued a Rule 1925(a) opinion, writing:

> The undersigned gave significant weight to the testimony of Ms. Ellie Williams, a mental health therapist who has been conducting family therapy sessions between the minor child and Father for approximately ten months. Ms. Williams testified at both the initial hearing on October 19, 2017[,] and at the second continued hearing on January 8, 2018[,] that Father and the minor child have made minimal progress in their family therapy sessions and that the minor child has significant anxiety and depression about visiting with and ultimately returning to Father's care. Ms. Williams also described Father's conduct as often being "bullying" towards the minor child. Ms. Williams continued to recommend that Father participate in individual health therapy in order to [be] better able to make progress in family therapy with the minor child. At the January 8, 2018 hearing, Ms. Williams recommended that it is in the minor child's best interest to maintain the status quo of one supervised visit and one family therapy session with Father per week.
>
> The undersigned also gave significant weight to the testimony of Ms. Carla Arp and Ms. Kate Maloney, both of whom are family engagement specialists who have been working with the minor child and Father. Both individuals testified to Father's resistance to embracing any parenting guidance and general lack of good faith participation in the family engagement services being offered to assist him in improving his relationship with his daughter. Ms. Arp also described Father's conduct towards the minor child to be bullying in nature on at least one occasion.

Trial Court Opinion, 2/20/18, at 1-2.

The trial court did not use the term "grave threat." But the court found it would not be in Child's "best interest or *her mental health and well-being for visits to be increased, even for increased supervised visits at this time.*"

- 7 -

Trial Court Order, 1/10/18, at 2 (emphasis added). The record supports the court's findings and conclusion.

Erin Voltz, a CYF caseworker, testified that unsupervised visitation with Father was suspended when he called the police on four occasions in August 2017 concerning interactions and visitation with Child. *See* N.T., 11/21/17, at 28-29. Father contacted the police so frequently he could not recall how many times he called the police in August 2017. *See* N.T., 1/8/18, at 167-168. When Father called the police, Child became upset and returned from visits with Father very upset, with high anxiety. *See* N.T., 11/21/17, at 27-28, 30. Child testified this scared and upset her. *See id*., at 53-54. Child did not believe she would feel unsafe if visits were unsupervised, but would feel "very, very uncomfortable." *Id*., at 54.

Ms. Williams, the therapist at Equiteam Support Services, testified Child and Father are "at that kind of stuck point." N.T., 1/8/18, at 72. She described the family therapy progress as minimal to none. *See id*., at 75-76. Typically, as soon as there was a difference of opinion at the sessions, there would be immediate questioning or conflict. *See id*., at 72. Ms. Williams described Father's behavior during therapy as bully-like, repeatedly being very critical and questioning. *See id*., at 78. Ms. Williams believed that there needed to be progress before additional visits were added, given how quickly conflict and arguments arose within the therapeutic setting. *See id*., at 82. She expressed concern for Child's mental well-being if visits occurred more frequently. *See id*. Ms. Williams had significant concerns regarding reunification because of

Child's depression and anxiety arising out of the limited contact between Father and Child. *See id*., at 85. Child expressed to Ms. Williams she does not feel safe in Father's home and has extreme anxiety. *See* N.T., 10/19/17, 17. Ms. Williams believed longer visits would give Child more anxiety. *See* N.T., 1/8/18, at 89.

Carla Arp, a visitation supervisor, testified with respect to an argument she witnessed between Child and Father about what Child could take with her from Father's home to her foster home. The argument occurred during a supervised visit. Ms. Arp indicated she spent one-half hour coaching Father regarding what to say, and not say, that would be beneficial or harmful to Child's psychological well-being. *See id*., at 24-25. Father indicated he understood, then went upstairs and did the opposite of what Ms. Arp recommended, removing items Child wanted to take and questioning Child regarding each item she selected. *See id*., at 12-13, 25. Ms. Arp testified Father's behavior was bullying and inappropriate. *See id*. Ms. Arp believed the visits should be supervised until Child is mature enough or confident enough to intervene on her own behalf. *See id*., at 30.

Based upon our review of the certified record, we discern no abuse of discretion with regard to the trial court's decision to suspend Father's unsupervised visits with Child. The record indicates Father's actions at the unsupervised visits with Child caused depression and extreme anxiety, and are counterproductive to reunification. Additionally, Father's unsupervised

visitation with Child is suspended only until further action of the court, which reflects the trial court's intention to re-examine this issue.

After careful consideration of the applicable law and the record before us, we conclude that the trial court properly fashioned its order suspending Father's unsupervised visitation with Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/03/2018